IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| BEST MEDICAL<br>INTERNATIONAL, INC., *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 1:12-CV-875 (GBL/TRJ) |
| v. | ) ) ) | |
| RECEIVABLES CONTROL<br>CORPORATION, *et al.*, | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Wells Fargo Bank, N.A.'s ("Wells

Fargo") Amended Motion for Attorneys' Fees. (Doc. 22.) This case concerns defamation and

tortious interference claims against a bank and a collection agency arising out of e-mail

correspondences between the agency and a debtor's clients. On October 26, 2012, the Court

granted Defendants Receivables Collection Corporation ("RCC") and Wells Fargo's Motion to

Dismiss. (Doc. 20.) Wells Fargo now requests attorneys' fees, which are governed by fee-

shifting provisions in its Loan Documents with Plaintiffs Best Medical International, Inc. ("Best

Medical") and Krishnan Suthanthiran.

The issue before the Court is whether fees incurred to defend claims of defamation and

tortious interference entitle Defendant Wells Fargo to attorneys' fees pursuant to provisions of

the Loan Documents. The Court holds that the fee-shifting provisions in the Loan Documents,

given their plain meaning, do not extend to fees incurred defending tort actions in connection

with RCC's efforts to make collections. Thus, the Court denies Wells Fargo's Motion for Attorneys' Fees.

## I.    BACKGROUND

Wachovia, Wells Fargo's predecessor, entered into a series of loan agreements in 2004 with Plaintiffs Best Medical and Mr. Suthanthiran, as well as their affiliates Best Medical Industries, Gunston Hall Realty, and Huestis Machine Corporation, to denote and secure loans made to Best Medical.[1] (Def.'s Mem. Supp. Mot. Att'y Fees at 4 [hereinafter "Def.'s Br."], Doc. 23.) The Promissory Note between Plaintiffs and Wachovia evidencing the loans contained the following provision for recovery of attorneys' fees:

> **ATTORNEYS' FEES AND OTHER COLLECTION COSTS.** Borrower shall pay all of Bank's reasonable expenses *incurred to enforce or collect any of the Obligations* including, without limitation, reasonable arbitration, paralegals', attorneys', and experts' fees and expenses, *whether incurred without the commencement of a suit*, in any trial, arbitration, administrative proceeding, or in any appellate or bankruptcy proceeding.

(Def.'s Br. Ex. A, at 1 (emphasis added).) The Security Agreement between Plaintiffs and Wachovia contained a similar provision for recovery of attorneys' fees, stating:

> **ATTORNEYS' FEES AND OTHER COSTS OF COLLECTION.** Debtor shall pay all of Bank's reasonable expenses *incurred in enforcing this Security Agreement and in preserving and liquidating Collateral*, including but not limited to, reasonable arbitration, paralegals', attorneys', and experts' fees and expenses, whether incurred *with or without the commencement of a suit*, trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

(*Id.* (emphasis added).) In 2009, Plaintiffs defaulted on those obligations, and Wells Fargo, successor in interest to Wachovia, executed a Waiver and Amendment Agreement and two

---

[1] The current actions concerns only Plaintiffs Best Medical International, Inc. and Mr. Krishnan Suthanthiran. Loan agreements between Wells Fargo and Plaintiffs' affiliated entities are not presently at issue.

Guaranty of Payment Agreements, providing Plaintiffs more time to repay the loans.[2] (Def.'s Br. at 4). The Guaranty of Payment Agreements also contained provisions for recovery of attorneys' fees, stating that Wells Fargo was entitled to attorneys' fees "[i]n the event [Wells Fargo] *shall commence* any action or proceeding for the enforcement of this Agreement." (Def.'s Br. Ex. A, at 3 (emphasis added).) The Loan Documents further provided that all rights contained therein were cumulative and could be exercised concurrently or separately. (*Id.*)

In 2010, Plaintiffs again defaulted on their loans, and Wells Fargo confessed judgment against Plaintiffs in the amount of $12,119,254.01. (Def.'s Br. at 4.) The Circuit Court of Fairfax County awarded Wells Fargo the full amount of the confessed judgment on February 24, 2012, and dismissed with prejudice all of Plaintiffs' allegations for discrimination, fraud, and estoppel against Wells Fargo. *See* Final Order, *Best Medical Int'l, Inc. v. Wells Fargo Bank, N.A.*, No. CL 2010-10997 (Va. Cir. Ct. Feb. 24, 2012). The Circuit Court also held that Wells Fargo was entitled to recover attorneys' fees because Wells Fargo initiated the litigation to collect the confessed judgment, and therefore incurred fees to enforce the Loan Documents in accordance with the fee-shifting provisions. (Transcript of Oral Argument at 65:13-67:5, *Best Medical Int'l*, No. CL 2010-10997 (Va. Cir. Ct. Feb. 24, 2012), Doc. 23-4.) The Circuit Court explained that although Plaintiffs initiated a separate lawsuit against Wells Fargo, Plaintiffs' claims were raised to persuade the court to set aside the confessed judgment and were the same defenses used in the original judgment proceeding. (*Id.* at 16.) Thus, the Circuit Court held that Plaintiffs' claims flowed from the confessed judgment, which also constituted fees "incurred in enforcing" the Loan Agreements. (*Id.* at 18.)

---

[2] Before Plaintiffs' default in 2009, Wells Fargo became the successor in interest to Wachovia and assumed responsibility for the Loan Documents. *See Best Med. Int'l, Inc. v. Wells Fargo, Inc., N.A.*, Nos. CL-2010-10997, CL-2010-9395, CL-2010-9414, 82 Va. Cir. 502 (Va. Cir. Ct. 2011).

After the Circuit Court granted Wells Fargo's confessed judgment, Wells Fargo retained

Defendant RCC to collect Plaintiffs' accounts receivable. (Def.'s Br. at 5.) In carrying out

Wells Fargo's efforts to collect the judgment, RCC contacted Plaintiffs' customers to inform

them that any money owed to Plaintiffs should be paid only to RCC. (*See* Compl. Exs. B, C,

Doc. 1.) On August 7, 2012, Plaintiff filed its Complaint, in this Court, against Wells Fargo and

RCC, alleging that RCC's contact with the account debtors informing them of the confessed

judgment and the state of Best Medical's accounts receivable constituted defamation and tortious

interference. (Compl. ¶¶ 8-14.) Wells Fargo subsequently filed a motion to dismiss for failure to

state a claim. On October 26, 2012, the Court granted the Motion to Dismiss and dismissed all

of Plaintiffs' claims with prejudice. (Doc. 8.) Wells Fargo then filed the instant Motion for

Attorneys' Fees, asserting the rights provided by Plaintiffs' Loan Documents.

## II.    STANDARD OF REVIEW

Under the "American Rule," parties are responsible for their own attorneys' fees. *In re

Crescent City Estates, LLC*, 588 F.3d 822, 825 (4th Cir. 2009) (citing *Fogerty v. Fantasy, Inc.*,

510 U.S. 517, 533 (1994)). Thus, a prevailing litigant is generally not entitled to recover

attorneys' fees from the non-prevailing litigant. *Id.* (citing *Alyeska Pipeline Serv. Co. v.

Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). One exception to this rule is when the parties

contractually arrange for the non-prevailing party to assume responsibility for the prevailing

party's attorneys' fees. *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443,

448 (2007) (citation omitted); *see also Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 49 (Va. 2006) (citing

*Mullins v. Richlands Nat'l Bank*, 403 S.E.2d 334, 335 (Va. 1991)) (explaining that "parties are

free to draft and adopt contractual provisions shifting the responsibility for attorneys' fees to the

losing party in a contract dispute"). The party seeking to recover attorneys' fees has the burden

of demonstrating that it is entitled to fees and that the amount it seeks is reasonable. *See Airlines Reporting Corp. v. Sarrion Travel, Inc.*, 846 F. Supp. 2d 533, 536 (E.D. Va. 2012).

If the recovery of attorneys' fees is authorized by contract, the court must undertake a three-step analysis to ensure the fees awarded are reasonable. *See Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243 (4th Cir. 2009). First, the court must "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Id.* (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). Second, the court should subtract fees for hours spent on unsuccessful, unrelated claims. *Id.* at 244. Third, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the [prevailing party]." *Id.*

## III.    ANALYSIS

The Court denies Wells Fargo's Motion because, while its defense is ostensibly related to its efforts to collect the judgment, the fees incurred to defend Best Medical's tort claims do not constitute fees "incurred to enforce" the Loan Documents.

"Contractual provisions shifting attorneys' fees . . . are valid and enforceable." *Airlines Reporting*, 846 F. Supp. 2d at 536 (quoting *Signature Flight Support Corp. v. Landow Aviation Ltd. P'ship*, 730 F. Supp. 2d 513, 518 (E.D. Va. 2010)). Such provisions are construed as written, and the Court does not add terms that were not included by the parties. *PMA Capital Ins. Co. v. U.S. Airways, Inc.*, 626 S.E.2d 369, 372 (Va. 2006) (citing *Wilson v. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984)). When the terms of the contract are plain and unambiguous, the contract is construed according to its plain meaning. *Id.* "A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." *Williams v. Commonwealth Real Estate Bd.*, 698 S.E.2d 917, 925 (Va. 2010) (citing *Eure v. Norfolk Shipbuilding & Drydock*

5

*Corp.*, 561 S.E.2d 663, 668 (Va. 2002)). If the Court finds any terms are ambiguous, "it is a generally accepted principle that any ambiguity in that language will be interpreted against the drafter." *Cent. Tel. Co. of Va. v. Sprint Commc'n Co. of Va., Inc.*, 759 F. Supp. 2d 789, 804 (E.D. Va. 2011).

The provisions in the Loan Documents provide for reasonable attorneys' fees only "incurred in enforcing" the agreement or "incurred to enforce or collect" any of Plaintiffs' obligations. "Incur" means to "suffer or bring on oneself (a liability or expense)." Black's Law Dictionary 836 (9th ed. 2009). "Enforce" means "[t]o give force or effect to (a law, etc.); to compel obedience to." *Id.* at 608. Thus, for Wells Fargo to recover attorneys' fees under these provisions, Wells Fargo must have acted to compel or administer the terms of their Loan Documents and incurred fees as a direct result of that enforcement effort. In other words, the operation of the Loan Documents and Wells Fargo's right to collect under them must have been the subject of the underlying litigation. *See S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, No. 1:11-CV-00517, 2012 WL 3579605, at *2 (E.D. Va. Aug. 17, 2012) (finding that the prevailing party did not incur fees in connection with enforcing its agreement when the underlying action attempted to render the agreement unenforceable).

In defending against Plaintiffs' tort claims, Wells Fargo did not seek to enforce any provision of the Loan Documents, nor would the outcome of Plaintiffs' suit have any effect on the Loan Documents' validity or either party's rights within them. Plaintiffs' claims were related to Wells Fargo's enforcement and collection efforts in the sense that Wells Fargo would have no right to collect Plaintiffs' accounts receivable without such an agreement. However, the fee-shifting provision requires more than mere relation. The language of the Guaranty of Payment

6

Agreements reinforces this conclusion. Section 1.5, entitled Reimbursement for Expenses, states:

> In the event *the Lender shall commence any action or proceeding for the enforcement of this Agreement*, then the Guarantors will reimburse the Lender, promptly upon demand, for any and *all expenses incurred by the Lender in connection with such action or proceeding*, including, without limitation, reasonable attorney's fees.

(Def.'s Br. Ex. A (emphasis added).) The Court recognizes that the provisions in the Promissory Note and the Security Agreement state that Wells Fargo could recover fees with or without commencement of a proceeding. Reading all provisions together, however, compels the conclusion that any ensuing proceeding must bear directly upon Wells Fargo's right to collect according to the Loan Documents.

In the parties' most recent litigation in the Circuit Court of Fairfax County, the court awarded Wells Fargo attorneys' fees because "the entire essence of that case was the enforcement of the promissory note." (*See* Def.'s Br. Ex. D, at 18.) First, Wells Fargo commenced the litigation by filing the pleadings for the confessed judgment. (*Id.* at 15-16.) Second, although Plaintiffs thereafter instituted a separate proceeding, their claims were the same as those raised to support their motion to set aside the judgment and therefore flowed from the confessed judgment. (*Id.* at 17-18.) Essentially, Wells Fargo incurred attorneys' fees in enforcing the Loan Documents during those proceedings because the parties were litigating whether Wells Fargo was entitled to collect under their agreements. By contrast, neither party in this action questioned Wells Fargo's right to collect Best Medical's accounts receivable. Ergo, Plaintiffs' obligation to repay the loans to Wells Fargo would have been unaffected by disposition of the tort claims in Plaintiffs' favor. Thus, the fee-shifting provisions do not apply to Wells Fargo's defense of Plaintiffs' tort claims.

Wells Fargo would have the Court read the relevant provisions to allow recovery for attorneys' fees any time Plaintiffs commenced an action against Wells Fargo that is in any way connected with their relationship. However, such reading contrasts the provisions' plain meaning, and the Court will not construe the Loan Documents so broadly. The Court does not find that the parties intended for Wells Fargo to be able to collect fees in both contract and tort actions, and the parties could have provided such a provision if they so desired. Even assuming, *arguendo*, that Wells Fargo's interpretation of the provisions in the Loan Documents was equally as reasonable as what the Court determines its plain meaning to be, the ambiguity of their force is construed against the drafter of the agreement. *See Mahoney v. NationsBank of Va., N.A.*, 455 S.E.2d 5, 9 (Va. 1998) (construing against the bank an ambiguity in its contract regarding when it was entitled to attorneys' fees and costs and when it was only entitled to costs). Thus, because Plaintiffs' tort claims fall outside the scope of the fee-shifting provisions, Wells Fargo is not entitled to an award of attorneys' fees.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Wells Fargo's Motion for Attorney's Fees, as the fee-shifting provisions of the Loan Documents, addressing attorneys' fees and costs, do not apply to the defense of Plaintiff's defamation and tortious interference claims. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Wells Fargo's Motion for Attorneys' Fees (Doc. 22) is **DENIED**.

**IT IS SO ORDERED.**

ENTERED this 26ᵗʰ day of March, 2013.

Alexandria, Virginia
3/26 2013

_____
                    /s/
Gerald Bruce Lee
United States District Judge

8